In the Matter of the Estate of MARY L. TROTTER, Deceased.

Surrogate's Court, New York County, October 31, 1940.

*Stewart & Shearer* [*J. Taylor Woodward* of counsel], for the petitioner.

*Guggenheimer & Untermyer* [*Charles S. Guggenheimer, Abraham Shamos* and *Mitchell Salem Fisher* of counsel], for George Trotter Van Antwerp, Lucie Byrd Trotter and Helen T. Gilmor, respondents.

*Alger, Peck, Andrew & Rohlfs* [*George W. Alger* and *Lewis F. X. Corignola* of counsel], for Florence Westervelt Trotter, individually, and Florence Westervelt Trotter and Clifford James Hedge, executors and trustees, etc., of George Trotter, deceased, respondents.

*Edward A. McInnes* [*George F. Kaiser* of counsel], for Mary Westervelt Trotter and Alice Van Antwerp De Sardeleys Georgano, respondents.

FOLEY, S. The trustee in this final accounting proceeding seeks a construction of the wills of the donor and the donee under a power of appointment. The questions involved are: (1) Whether George Trotter, the son of deceased, validly exercised a power given to him by the will of this testatrix as to the whole or a part of the fund; (2) whether the appointment is partially invalid, and (3) in the latter event whether the alternative provisions of the donor's will are valid and effective or are void with a consequent determination of intestacy.

The testatrix and donor died a resident of this State on March 13, 1891, survived by her three children, George, Theodore and Elizabeth. By the thirteenth paragraph of her will she created a trust of one-third of her residuary estate for the benefit of George Trotter for life with directions to pay the principal of the trust on his death to such persons and in such manner as he shall in his last will appoint. The will further provided that if the donee failed to appoint and died leaving a widow and lawful issue him surviving the trust was to be continued and one-third of the income thereof paid to his surviving widow for her life or until her remarriage. The remaining two-thirds of the income she directed to be paid in equal shares to the surviving lawful issue of George until the death or remarriage of the widow when the principal was to be paid outright to the lawful issue. At the date of this decedent's death in 1891 the son, George, was unmarried. He died a resident of England on July 30, 1939, survived by a widow and two adult children. Aside from the power of disposition by appointment, George Trotter left an individual estate valued at less than one hundred dollars. By the terms of his will probated in England he bequeathed his entire estate to individual trustees with directions to pay one-half thereof outright to his wife. As to the remaining one-half he provided that it should be held in trust for the respective lives of his two children with further gifts over upon their deaths.

His will did not specifically mention or in any manner refer to the power of appointment given to him by this testatrix. The will of George Trotter although silent in respect to the power of appointment must nevertheless be held to include an exercise of the power. (Pers. Prop. Law, § 18; *Low* v. *Bankers Trust Co.*, 270 N. Y. 143; *Lockwood* v. *Mildeberger*, 159 id. 181; *Matter of Summerfield*, 172 Misc. 509.)

The children of George Trotter and the representatives of his estate contend that the validity of the exercise of the power of appointment should be determined in accordance with the law of England which was the country of domicile of the donee, and that, so tested, the trust must be sustained. Regardless of the correctness of the interpretation placed upon the English law this contention must be overruled. In passing upon this identical question in *Matter of Harriman* (124 Misc. 320), which was affirmed on the opinion of the surrogate (217 App. Div. 733), I said: " It is the established law of this State that the courts of New York alone must determine the validity and effect of an instrument, whether will or deed, which purports to exercise a power of appointment under the will of a New York donor."

Numerous other decisions in the courts of this State have firmly established the principle of law restated by me in *Matter of Harriman (supra)*. (*Matter of Bearns*, N. Y. L. J. April 28, 1939, p. 1956; affd., 258 App. Div. 954; affd., 284 N. Y. ——; *Matter of New York Life Ins. & T. Co.*, 139 N. Y. Supp. 695; affd., 157 App. Div. 916; affd., 209 N. Y. 585; *Chase National Bank* v. *Chicago Title & Trust Co.*, 155 Misc. 61; affd., 246 App. Div. 201; affd., 271 N. Y. 602; motion for reargument denied, Id. 659; *City Bank Farmers Trust Company* v. *Whiteing*, 136 Misc. 416; 38 Harv. L. Rev. p. 661, footnote commenting on the decision in *Matter of Harriman, supra*.)

The validity of the exercise of the power of appointment can only be tested by reading the provisions of the will of the donee into the provisions of the will of the donor which created the power. (*Fargo* v. *Squiers*, 154 N. Y. 250; *Low* v. *Bankers Trust Company, supra*.) The additional question then arises as to whether the terms of the donee's will created gifts or trusts which were lawful under the laws of our State. Where additional life estates are created by the donee's will the life tenants must have been in existence at the date of the donor's death to be valid. The number of such life estates created under the will of the donor and donee must not exceed the statutory limit of the lives of two persons plus a minority in fee. Where the donor has provided for two successive life estates the donee may not create a third life estate. To be valid the property must vest, under the combined provisions of the donor's and donee's will, at the end of the permitted statutory period for the suspension of the power of alienation.

In the present situation we have the fact that the will of Mary L. Trotter, the donor of the power, created a primary life estate for her son, George Trotter. In the exercise of the power and under

the terms of his will, he gave outright to his widow one-half of the property which was subject to the power. I hold to that extent his exercise of the power of appointment is valid. To that extent also the principle of judicial salvage may be applied. (*Matter of Eveland*, 284 N. Y. 64; *Matter of Lyons*, 271 id. 204; *Matter of Trevor*, 239 id. 6; *Matter of Froman*, 165 Misc. 400; *Matter of Summerfield, supra.*)

In the disposition of the other one-half of the property the donee attempted to create additional life estates for his children, who were not in being at the date of death of the donor. As stated above, counsel for the children contend that these additional trusts are valid under the law of England and since the donee of the power was domiciled there, the law of his domicile controls. Certain authorities are cited in support of their position. They are, among others, *Robb* v. *Washington and Jefferson College* (185 N. Y. 485); *Hope* v. *Brewer* (136 id. 126); *Chamberlain* v. *Chamberlain* (43 id. 424); *Manice* v. *Manice* (Id. 303). These authorities are not in the slightest degree applicable to the present situation. In none of these cases was a power of appointment involved. The issue in each was the validity or invalidity of a direct gift to a foreign charitable legatee or to foreign trustees for charitable purposes. If valid in the foreign jurisdictions, the courts of our State give recognition and force to them. That rule of law has never been extended to equitable or legal life estates or remainders dependent upon the exercise under the power granted by a donor, resident in New York.

Since neither of the daughters of the donee was living at the date of death of this testatrix the attempted creation of trusts to continue for their lives is invalid as an unlawful suspension of the power of alienation and violative of our Statutes of Perpetuities. (Pers. Prop. Law, § 11, Real Prop. Law. §§ 42, 178; *Fargo* v. *Squiers, supra; Matter of Hayman*, 134 Misc. 803; affd., 229 App. Div. 853; affd., 256 N. Y. 557.) There was thus a failure by George Trotter to exercise the power as to one-half of the property subject to appointment.

Under these circumstances and because of the failure to appoint, are the alternative gifts in the donor's will in the event of the default of the exercise of the power, lawful and enforcible? An examination of her will establishes clearly that they could not be given force or effect. The same virus of illegality which nullified similar life estates in the donee's will destroys these alternative gifts of the donor. The testatrix here directed in general that in default of the power one-third of the income of the trust be paid to the widow of the son. A life estate to a wife or widow of an income beneficiary may contemplate a person not in existence at the time of the testator's death and, therefore, is an invalid suspension of alienation.

(*Schettler* v. *Smith,* 41 N. Y. 328; *Van Brunt* v. *Van Brunt,* 111 id. 178; *Meeker* v. *Draffen,* 201 id. 205.) Where, however, there is a person in existence at the time of the making of the will who is intended by the testator to receive the gift on the happening of the contingency the gift will be upheld. (*Matter of Friend,* 168 Misc. 607; affd., 257 App. Div. 924; affd., on this point, 283 N. Y. 200.) In the present case George Trotter was unmarried at the date of the execution of his mother's will. It is quite apparent, therefore, that the testatrix was not thinking of a living person when she referred to the "widow" of her son. The attempt on the part of Mrs. Trotter to create a life estate for the widow of her son, therefore, failed.

There remains the question of whether the gift by the donor of the remainder of the trust to the lawful issue of the son on the death or remarriage of his widow was vested and subject to acceleration or contingent and not capable of acceleration. The donor's will specifically provides that this remainder dependent upon the life estate of the widow of the son " shall be contingent, and that in such event, no estate shall vest in any person or persons, until the death or remarriage of his said widow." No acceleration of the remainder of this trust is possible since the remainder is clearly contingent under the positive and unmistakable language of the testatrix. The contingent gift over to take effect at the termination of the unlawful trust period falls with the underlying void provisions. (*Matter of Durand,* 250 N. Y. 45; *Matter of Silsby,* 229 id. 396; *Matter of Terwilligar,* 135 Misc. 170; affd., 230 App. Div. 763.) I hold, therefore, that the testatrix died intestate as to one-half of the remainder of the trust created for the benefit of her son, George Trotter. That sum must be paid in equal parts to the estates of her three children, who survived her, as her next of kin but have since died. They were George Trotter, Theodore Trotter and Elizabeth Trotter Van Antwerp.

A claim for money loaned against the estate of George Trotter is asserted here by the estate of Theodore Trotter, who died a resident of this State. That claim cannot be allowed in this proceeding. The regular order of procedure must be followed. The intestate share of George Trotter must be paid to an ancillary representative of his estate appointed in this jurisdiction. The claim may then be presented to such ancillary representative who in accordance with the relevant rules, must retain the fund in his hands until the claim of the resident of this State has been disposed of by voluntary payment or judicial determination.

Submit decree on notice construing the will and settling the account accordingly.